Argued and submitted June 27, reversed and remanded December 24, 2008

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

KENNETH WAYNE FOLAND,
*Defendant-Appellant.*

Tillamook County Circuit Court
051226; A131597

199 P3d 362

Stephanie J. Hortsch, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Legal Services Division, Office of Public Defense Services.

Sally L. Avera, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Sercombe, Presiding Judge, and Brewer, Chief Judge, and Riggs, Senior Judge.

SERCOMBE, P. J.

## SERCOMBE, P. J.

Defendant appeals a judgment of conviction for possession of methamphetamine. ORS 475.894. He assigns error to two trial court rulings—the denial of his motion to suppress evidence and the imposition of a special condition of probation. For the reasons stated below, we conclude that the court erred in failing to suppress evidence obtained after an unlawful extension of a traffic stop of defendant and, therefore, reverse the conviction and remand.

We state the facts consistently with the trial court's explicit and implicit findings. *State v. Ehly*, 317 Or 66, 74-75, 854 P2d 421 (1993); *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968). During the evening of September 4, 2005, Trooper Hurliman observed defendant driving a truck with expired vehicle license tags. Hurliman stopped the truck and approached the vehicle on foot. Defendant stepped out of the truck. Hurliman noticed defendant's attire—he wore a camouflage jacket and there was a bulge in his front left pants pocket the size and shape of a fifty-cent piece—as well as an empty gun rack in the truck and a Marine Corps sticker on the rear window.

Hurliman told defendant why he had been stopped and then asked him if he had any weapons. Defendant answered that he did not and indicated that Hurliman could check the truck for weapons. Hurliman told defendant that he would like to pat him down for safety reasons. According to Hurliman, defendant became apprehensive at that request. However, instead of patting down defendant, Hurliman asked him again whether he had any weapons on his person. Defendant removed a knife from a sheath on his right hip and a folding knife from his pocket and gave them to Hurliman.

At that point, Hurliman questioned defendant about the bulge in his pocket. Defendant responded that it was aspirin. In response to Hurliman's request to see what was in his pocket, defendant "reached in his pocket and removed * * * a silver circular rustic metallic tin." When Hurliman asked if he could look in, defendant became "very agitated and said 'no,' " said the tin belonged to his brother, and then put it back in his pocket. Hurliman told defendant that he

believed the tin contained drugs. Defendant told him to "prove it." Hurliman replied, "[G]ive me some credit," and asked defendant if it was methamphetamine. Defendant responded, "[Y]eah, it's meth," at which point the officer advised him of his *Miranda* rights. Hurliman continued to question defendant about his methamphetamine use and then asked if he could see the tin. Defendant handed the tin to Hurliman, who opened it and found a bindle of crystal methamphetamine. Following the drug investigation, Hurliman continued his investigation of the traffic infraction by obtaining defendant's license and vehicle information and running the appropriate checks through dispatch. Defendant was cited and released.

Defendant was charged with possession of methamphetamine. Before trial, defendant moved to suppress all evidence obtained during the encounter, claiming that the evidence was the product of an unlawful extension of the traffic stop in violation of his rights under Article I, section 9, of the Oregon Constitution and the Fourth Amendment to the United States Constitution.[1] The trial court denied the motion. Defendant entered a conditional plea of guilty, reserving the right to appeal the trial court's denial of his motion to suppress. Defendant was convicted, and this appeal followed.

On appeal, defendant assigns error to the denial of his motion to suppress, reiterating his arguments made to the trial court. The state concedes that Hurliman lacked reasonable suspicion that the tin defendant possessed contained a controlled substance. The state goes on to argue, however, that the evidence was nonetheless admissible because Hurliman acted within the scope of his authority. Resolution of defendant's assignment of error under Article I, section 9, of the Oregon Constitution requires the analysis of two issues: (1) whether the officer unconstitutionally

---

[1] Article I, section 9, of the Oregon Constitution provides, in part, "No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure."

The Fourth Amendment provides, in part, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated * * *."

extended the duration of the traffic stop beyond a reasonable time, and, if so, (2) whether the evidence was obtained through exploitation of the illegally extended stop.[2]

This case is controlled by *State v. Rodgers*, 219 Or App 366, 182 P3d 209, *rev allowed*, 345 Or 301 (2008). In *Rodgers*, the defendant was lawfully stopped for a traffic infraction; the officer took his driver's license and vehicle registration and ran a records check. The records report was positive, but the officer did not issue a citation at that point. Instead, he questioned the defendant about items in his car that might indicate that the defendant was involved in the manufacture of methamphetamine. The defendant talked with the officer and eventually consented to a search of the car, leading to his conviction for unlawful manufacture of methamphetamine. *Id.* at 368-69.

In reversing the trial court's denial of the defendant's motion to suppress, we separated inquiries that are unrelated to an initial traffic stop and that could work as an unlawful restraint into two categories, explaining:

> "Inquiries unrelated to the initial traffic infraction can lead to unlawful restraint of a person's liberty in two situations. The first occurs when the officer concludes a lawful stop and then reinitiates a second stop by beginning to question the person about unrelated matters without reasonable suspicion. * * *
>
> "The second way in which an officer can unlawfully question a person after a lawful traffic stop occurs when the officer, without letting the person know expressly or by implication that he or she is free to leave, detains the person beyond the time reasonably required to investigate the traffic infraction and issue a citation."

*Id.* at 371. We therefore held that,

> "although an officer is free to question a motorist about matters unrelated to the traffic infraction during an unavoidable lull in the investigation, such as while awaiting

---

[2] Because we resolve this case on state law grounds, we do not reach defendant's federal constitutional claims. *See State v. Kennedy*, 295 Or 260, 262, 666 P2d 1316 (1983) (stating that all questions of state law should be considered and disposed of before reaching federal constitutional claims).

the results of a records check, that officer is not similarly free to question the motorist about unrelated matters as an alternative to going forward with the next step in processing the infraction, such as the writing or issuing of a citation."

*Id.* at 372.

■ Here, there is nothing in the record indicating that, by the time of the drug-related questioning, Hurliman was processing the traffic citation, such as asking defendant for the information necessary to issue the citation, waiting for defendant to retrieve items needed to continue the traffic stop, or "engag[ing] in any other steps related to the investigation of the traffic offense." *State v. Kirkeby*, 220 Or App 177, 186, 185 P3d 510, *rev allowed*, 345 Or 301 (2008). Thus, the questioning of defendant, the request to see what was in defendant's tin, and the statements that followed did not occur "during an unavoidable lull in the investigation." *Rodgers*, 219 Or App at 372.

Hurliman questioned defendant about drug possession as an alternative to continuing to process a citation for the expired tags infraction. Instead of asking additional questions related to the initial traffic infraction, issuing a citation, or ending the stop, Hurliman chose to ask defendant questions unrelated to the expired tags. Hurliman extended the duration of the stop beyond the time reasonably required to investigate and cite defendant for the traffic infraction.

■ To be lawful, that extension of the stop must have been supported by reasonable suspicion of further criminal activity. Reasonable suspicion requires that an officer subjectively believe that a person has committed a crime, a belief that also is objectively reasonable in light of the totality of the circumstances. ORS 131.605(5); *State v. Ehret*, 184 Or App 1, 7, 55 P3d 512 (2002). The trial court concluded:

"When asked if the Trooper could look inside the tin, the defendant became very agitated and yelled, 'No.' The defendant placed the tin back in his pocket.

"At that point, the Trooper formed the subjective belief that the defendant had drugs inside the tin. That belief was based upon the objective circumstances presented by the defendant's change of attitude and apprehensive words and

actions, which the Trooper believed indicated methamphetamine use.

"* * * * *

"The Court concludes that, the defendant's sudden demeanor change and the circumstances under which they occurred, gave the Trooper an objective basis to support his suspicion the defendant had committed the crime of possession of controlled substance."

We accept the court's factual findings but disagree that those findings establish that Hurliman's suspicion was objectively reasonable under the totality of the circumstances. The state concedes that "Hurliman lacked reasonable suspicion that the tin in defendant's pocket contained a controlled substance." We agree and accept the state's concession. Hurliman testified that he had seen no indication of drug activity. There is nothing in the record indicating that defendant was under the influence of a controlled substance. Defendant's demeanor raised no reasonable suspicion of criminal activity except in one respect—defendant's objection to and apprehension of Hurliman's requested patdown and search of the tin.

■ A person's reaction to a request for consent to search is not sufficient as a matter of law to support an objectively reasonable belief of criminal activity. As here, where a person has the right to refuse consent, the

"refusal to give consent to a search undoubtedly caused the officer to have a healthy suspicion that defendant was probably in illegal possession of something; but such a suspicion, however well founded, having been aroused merely on the basis of an assertion of one's constitutional rights, can play no part in creating probable cause for a search."[3]

*State v. Gressel*, 276 Or 333, 338-39, 554 P2d 1014 (1976). We view defendant's reaction to the inquiries concerning the patdown and the contents of the tin as "merely an unsophisticated attempt to assert his right of privacy." *Id.* at 338.

---

[3] We have previously held that the rule that "[a]llowing the police to conduct a search on the basis of the assertion of a privacy right would render the so-called right nugatory" applies "regardless of whether probable cause, reasonable suspicion or 'reasonable grounds' circumscribes the authority for invading the privacy interest." *State v. Brown*, 110 Or App 604, 611, 825 P2d 282 (1992).

Defendant's reaction to a request for consent that he is constitutionally entitled to refuse cannot form the basis of reasonable suspicion. To hold otherwise and "allow[ ] the police to use defendant's assertion of a privacy right as the basis for depriving him of that right would render the promise of Article I, section 9, illusory." *State v. Brown,* 110 Or App 604, 611-12, 825 P2d 282 (1992) (holding that defendant's "excited and belligerent" demeanor and his action of grabbing his car keys was a clumsy effort to assert his right to the privacy of his cars and refuse consent and could not be a basis for reasonable grounds to believe the cars contained evidence of a parole violation).

**4-6.** Having concluded that a violation of Article I, section 9, occurred, we turn to the issue of whether the evidence seized as a result of that violation must be excluded. In *State v. Hall,* 339 Or 7, 115 P3d 908 (2005), the Supreme Court held that police officers illegally exploited an investigatory stop of the defendant to gain his consent to search his vehicle. Under *Hall,* illegal police conduct may negate a defendant's consent to search where the conduct renders the consent involuntary. *Id.* at 20. Evidence may also be suppressed if the evidence results from exploitation of the unlawful police conduct. *Id.* at 21. Pursuant to the exploitation inquiry, for the evidence to be excluded, a defendant must establish the existence of a factual nexus, *i.e.,* the existence of a "but for" relationship, between the evidence sought to be suppressed and the unlawful police conduct. *Id.* at 25. Once a defendant shows that nexus, the "state has the burden to prove that the [evidence] was independent of, or only tenuously related to, the unlawful police conduct." *Id.* at 35. As we explained in *Rodgers,* once the factual nexus is shown, suppression is required "unless the state can prove that the disputed evidence inevitably would have been discovered, was independently discovered through lawful means, or was sufficiently attenuated from the unlawful police conduct." 219 Or App at 371.

Defendant has shown the required nexus—if not for the unlawful extension of the traffic stop, Hurliman would not have been in a position to request defendant's consent to the search of the tin or a patdown. The state does not advance any argument satisfying its burden under *Hall* to show that

there were intervening circumstances that severed the connection between the unlawful stop and defendant's admissions and consent to search the tin. Thus, the trial court erred in denying the motion to suppress.

Reversed and remanded.