Submitted August 27, 2008, Case Number A130175 and Case Number A130305 reversed and remanded May 27, 2009

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

BRUCE SHANNON HUGGETT,
*Defendant-Appellant.*

Washington County Circuit Court
C051879CR, C050186CR;
A130175 (Control), A130305

209 P3d 385

Ingrid Swenson, Executive Director, Peter Gartlan, Chief Defender, and Mary-Shannon Storey, Deputy Public Defender, Legal Services Division, Office of Public Defense Services, filed the briefs for appellant.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Kaye E. McDonald, Senior Assistant Attorney General, filed the briefs for respondent.

Before Landau, Presiding Judge, and Ortega, Judge, and Carson, Senior Judge.

LANDAU, P. J.

## LANDAU, P. J.

This is a consolidated appeal, involving two criminal cases. In Case Number A130175, defendant was convicted of one count of possession of a controlled substance, *former* ORS 475.992 (2003), *renumbered as* ORS 475.840 (2005). On appeal, he argues that the trial court erred in denying a motion to suppress evidence obtained during a traffic stop and in admitting a laboratory report at trial without requiring the state to produce the criminalist who prepared the report. In Case Number A130305, defendant had been placed on probation on an unrelated charge. The trial court, however, determined that defendant's conviction for possession of controlled substances constituted a violation of the terms of his probation. On appeal, defendant contends that a reversal of the possession conviction necessarily requires a reversal of the probation violation as well. We conclude that the trial court erred in denying the motion to suppress and reverse and remand both judgments on that basis. We do not reach the question whether the court erred in admitting the laboratory report.

The relevant facts are not in dispute for the purposes of the appeal. Around 10:00 p.m. on June 15, 2005, Washington County Sheriff's Deputy Andresen stopped defendant for riding a bicycle without a headlight. Andresen immediately recognized defendant as someone whom he previously had arrested for possession of a controlled substance and who was on probation for possession of methamphetamine. Andresen told defendant the reason for the stop, obtained defendant's identification card, and ran defendant's identification through dispatch to check for warrants. Andresen then asked defendant if he had any drugs in his possession; defendant replied that he did not. After dispatch reported that defendant was not the subject of any outstanding warrants, Andresen asked defendant for consent to search his person. Defendant replied that he "did mind kind of, but that he would empty his pockets." Before allowing him to do so, Andresen conducted a patdown for weapons but did not detect any. Andresen then said "okay," and defendant emptied his pockets, placing the contents on the hood of Andresen's patrol car.

Andresen noticed that defendant had not emptied a small change pocket and asked him what was in it. Defendant reached two fingers of his right hand into the pocket and told Andresen that he had emptied it. Andresen asked if he could check the pocket; defendant responded, "Go ahead." Andresen placed two fingers into the pocket and felt plastic at the bottom of it. He asked defendant what the object was and whether he could remove it from the pocket. Defendant replied that he did not know what the object was and that Andresen could remove it. Andresen did so and discovered that it was a plastic bag containing methamphetamine.

The trial court found that Andresen stopped defendant for a traffic violation and that, even before speaking to defendant, Andresen recognized him as a person whom Andresen had recently arrested for possession of methamphetamine and that Andresen "suspected that [defendant] might be possessing meth right then and there." The court also determined that a reasonable person would not have felt free to leave until he either was cited for the traffic violation or was told that he would not be cited. The court concluded, however, that, under ORS 810.410, Andresen was authorized to ask for consent to search defendant for contraband and that, in doing so, he did not unlawfully extend the initial stop. The court also concluded that, even assuming that Andresen extended the stop beyond a lawful time period, such extension was not the cause of his decision to ask to search defendant's pocket or of defendant's consent to the search, because, "from the moment the officer saw and recognized [defendant], the officer was looking for meth." The court denied defendant's motion to suppress.

The trial court found defendant guilty of possession of a controlled substance. Defendant agreed that his conduct constituted a violation of his probation. As previously described, the trial court entered a judgment of conviction for possession of a controlled substance and a judgment of probation violation.

■    In his first assignment of error on appeal, defendant argues that the trial court erred in denying his motion to suppress evidence discovered during the search of his pocket. Defendant acknowledges that Andresen's initial traffic stop

was lawful. He argues that Andresen, by asking defendant for consent to search rather than issuing a citation or telling defendant that he was free to leave, unlawfully extended the initial stop and that, at that time, Andresen lacked reasonable suspicion that defendant posed a threat to the deputy or had committed an offense beyond the traffic offense. According to defendant, under *State v. Kirkeby*, 220 Or App 177, 185 P3d 510, *rev allowed*, 345 Or 301 (2008), the extension of the initial stop was unlawful.

Defendant further argues that Andresen's serial requests for defendant's consent to search his person and, subsequently, his small change pocket constituted exploitation of an unlawful seizure. In particular, defendant contends that he consented to the first search based on Andresen's unlawful seizure and consented to the second search because he was aware that Andresen had observed his failure during the first search to empty his small change pocket. Thus, defendant argues, his consent to the second search was not made independently of the unlawful seizure or his consent to the first search, and he was entitled to suppression of the resulting evidence.

The state responds that Andresen permissibly sought defendant's consent to search during the course of a lawful traffic stop and that Andresen's request did not extend the duration of the stop because, at the time of the request, he had neither issued a citation for the traffic infraction nor exceeded the time reasonably required to do so. The state argues that, as in *State v. Amaya*, 176 Or App 35, 29 P3d 1177 (2001), *aff'd on other grounds*, 336 Or 616, 89 P3d 1164 (2004), Andresen's actions resulting in defendant's consent to search constituted lawful questions posed during the course of a single, lawful stop. The state further argues that, even assuming that Andresen's request for consent to search unlawfully extended the stop, the challenged evidence was not discovered as a result of Andresen's exploitation of that illegality; rather, Andresen sought defendant's consent to search based on his knowledge of defendant's previous conviction for possession of methamphetamine and his knowledge that defendant was on probation for that crime. Thus, the state contends, there was no "but for" relationship between the claimed illegality and Andresen's request for

consent. As to whether there was any relationship between the claimed illegality and defendant's giving of consent, the state points to the trial court's finding that, "[f]rom the get go, [defendant] was playing the cat and mouse game. * * * I don't find that anything that the officer did changed [defendant's] amenability to being searched."

Our resolution of defendant's assignment of error requires us to determine whether Andresen unlawfully extended the duration of the initial, lawful traffic stop and, if he did so, whether the challenged evidence was obtained through exploitation of that unlawful conduct. Determining whether a traffic stop was unlawfully extended is a fact-specific inquiry. *See, e.g., State v. Raney*, 215 Or App 339, 343, 168 P3d 803 (2007), *modified on other grounds on recons*, 217 Or App 470, 175 P3d 1024, *rev den*, 344 Or 671 (2008).

As we explained in *State v. Rodgers*, 219 Or App 366, 182 P3d 209, *rev allowed*, 345 Or 301 (2008), questioning unrelated to the initial basis for a stop can lead to unlawful prolongation of the stop in two situations. In the first situation, an officer concludes a lawful stop (for example, by telling a person that he or she is free to leave) and then initiates a second stop by questioning the person about unrelated matters without reasonable suspicion of further criminal activity. *Id.* at 371. In the second situation, an officer, without letting the person know expressly or by implication that he or she is free to leave, detains the person beyond the time reasonably required to investigate the initial basis for the stop and to issue a citation, without the requisite reasonable suspicion. *Id.* at 371-72. In either case, the extension of a lawful stop is unlawful unless it is supported by reasonable suspicion of criminal activity. *Id.* at 372; *see also State v. Broughton*, 221 Or App 580, 587-88, 193 P3d 978 (2008).

In this case, we conclude that Andresen extended the initial, lawful traffic stop beyond the time reasonably required to investigate and cite defendant for the traffic infraction. Nothing in the record indicates that, at the time that Andresen requested defendant's consent to search his person, he was awaiting the results of a records check, was waiting for defendant to provide him with items needed to continue the traffic stop, or was engaging in any other steps

related to the investigation of the traffic offense or the issuance of a citation for that offense. Although Andresen would have been free to question defendant about matters unrelated to the traffic offense during an "unavoidable lull" in his investigation of the offense, he was not similarly free to question him about unrelated matters as an alternative to going forward with the next step in processing the infraction, such as the writing or issuing of a citation. *See Rodgers*, 219 Or App at 372-73.

The state insists that Andresen did not actually extend the duration of the stop because he *could have* lawfully begun to write a citation at the time that he questioned defendant. Because the time spent writing such a citation would not have constituted an extension of the stop, the state argues, the fact that Andresen chose to use that time to question defendant likewise should not constitute an extension of the stop. We have rejected the same argument in previous cases. *See Rodgers*, 219 Or App at 373 (rejecting that argument); *see also Broughton*, 221 Or App at 590 (same). We adhere to those decisions in this case.

We turn, then, to whether the extension of the stop was supported by reasonable suspicion of criminal activity. Reasonable suspicion requires that an officer subjectively believe that a person has committed a crime and that the belief be objectively reasonable in light of the totality of the circumstances. ORS 131.605(5); *see also State v. Foland*, 224 Or App 649, 654, 199 P3d 362 (2008); *State v. Ehret*, 184 Or App 1, 7, 55 P3d 512 (2002).

In this case, we conclude that, even assuming that Andresen subjectively believed that defendant was in possession of a controlled substance, that belief was not objectively reasonable. Andresen did not testify as to any observations about defendant that would have supported such a belief; rather, Andresen formed his belief based entirely on his knowledge of defendant's prior conviction for possession of methamphetamine and his related probation status. Indeed, the state does not argue on appeal that Andresen had any other information supporting a belief that defendant had committed or was about to commit a crime.

We addressed the lawfulness of a stop under similar circumstances in *State v. Stone*, 223 Or App 724, 196 P3d 95 (2008). In that case, the officer lawfully stopped the defendant for a traffic violation. During the stop, the officer recognized the defendant as someone who previously had admitted to using methamphetamine. Based on that fact alone, the officer asked the defendant to step from her car and questioned her about whether she was then in possession of methamphetamine. *Id.* at 726. When she admitted that she was in possession of methamphetamine, she was cited for unlawful possession of a controlled substance. At trial, she moved to suppress the evidence, but the trial court denied the motion. *Id.* at 726-27. On appeal, the state confessed error, conceding that the mere fact that the officer knew that the defendant, at some time in the past, had committed a crime did not supply an objectively reasonable basis for believing that currently she was engaging in criminal activity. We accepted the concession, concluding that the officer indeed lacked reasonable suspicion that the defendant had committed a crime. *Id.* at 727-28. This case is materially indistinguishable from *Stone*.

■     Having concluded that Andresen's conduct in extending the stop violated defendant's rights under Article I, section 9, of the Oregon Constitution we turn to whether the evidence must be excluded on the ground that it was obtained as a result of exploitation of that illegal conduct. Under *State v. Hall*, 339 Or 7, 25, 115 P3d 908 (2005), we first consider whether the defendant has established the existence of a minimal factual nexus—that is, a "but for" relationship—between the evidence sought to be suppressed and the unlawful police conduct. Once a defendant shows that nexus, the state has the burden to prove that the discovery of the evidence was independent of, or only tenuously related to, the unlawful police conduct. *Id.* at 34-35.

■     Deciding whether the state has met that burden requires a fact-specific inquiry into the totality of the circumstances to determine the nature of the relationship, if any, between the officer's conduct and, as pertinent here, a defendant's consent. *Id.* at 35. Considerations relevant to determining whether a causal connection exists between unlawful detention of a defendant and the defendant's consent to search, so that suppression of evidence seized during the

search is appropriate, include: (1) the temporal proximity between the unlawful police conduct and the defendant's consent; (2) the existence of any intervening circumstances; and (3) the presence of any circumstances, such as a police officer informing the defendant of the right to refuse consent, that mitigated the effect of the unlawful police conduct. *Id.* As we explained in *Rodgers*, once the factual nexus is shown, suppression is required "unless the state can prove that the disputed evidence inevitably would have been discovered, was independently discovered through lawful means, or was sufficiently attenuated from the unlawful police conduct." 219 Or App at 371.

In this case, the state argues that defendant has not shown even the required minimum factual nexus because, from the moment that Andresen stopped him, the deputy recognized him as a person whom he previously had arrested for, and who previously had been convicted of, possession of methamphetamine. According to the state, under that circumstance, Andresen would have requested defendant's consent to search at some point during the stop irrespective of whether the deputy unlawfully extended it. The state further argues that, by the same reasoning, Andresen's request for consent to search was not prompted by anything that occurred during or as a result of the unlawful extension, such as defendant's failure during the search to empty his change pocket.

We disagree that defendant has not established a "but for" relationship. To begin with, the state's contention is predicated on a conjecture regarding Andresen's intent from the beginning of the lawful stop. There is nothing in the record, however, to support the conjecture that Andresen would have requested consent to search defendant anyway. Aside from that, the fact remains that Andresen made that request, and discovered the relevant evidence, during the unjustified extension of the initial lawful stop. *See State v. Hendon*, 222 Or App 97, 107, 194 P3d 149 (2008) (where the officer searched the defendant and discovered the relevant evidence during an unlawful extension of a lawful stop, the defendant established a minimum factual nexus between the officer's unlawful conduct and the discovery of the evidence). That is sufficient to show the required nexus. We therefore consider,

finally, whether the state met its burden to prove that defendant's consent was independent of, or only tenuously related to, the unlawful police conduct.

We conclude that the state did not meet that burden. Minimal time, if any, elapsed between the extension of the stop, the request for consent to search, and the discovery of the evidence; indeed, the request to search itself constituted the unjustified extension of the stop. Nor were there any intervening or mitigating circumstances: Andresen did not tell defendant that he was free to leave or that he could refuse to consent. *See State v. Hitchcock/Winters*, 224 Or App 77, 88-89, 197 P3d 33 (2008) (reaching same conclusion based on similar facts). Considering the totality of the circumstances, the state has not met its burden of proving that the challenged evidence did not derive from the exploitation of Andresen's unlawful extension of his initial, lawful stop of defendant.

In sum, defendant was unlawfully stopped when, rather than completing the issuance of the traffic citation and without adequate suspicion of criminal activity, Andresen asked defendant for consent to search his person. Moreover, there was a factual nexus between that unlawful conduct and defendant's consent to the search that resulted in the discovery of the challenged evidence, and no intervening circumstance severed that connection. The trial court erred in denying defendant's motion to suppress. It follows that his conviction in Case Number A130175 must be reversed and the case remanded to the trial court.

Because defendant's conduct resulting in his conviction for possession of a controlled substance in Case Number A130175 also formed the basis for the trial court's finding that defendant violated his probation in Case Number A130305, the judgment in the latter case must also be reversed and remanded to the trial court for reconsideration in light of the reversal of defendant's conviction in Case Number A130175. *See State v. McMilian*, 191 Or App 62, 69, 80 P3d 538 (2003), *rev den*, 337 Or 248 (2004) (remanding judgment revoking probation for reconsideration where revocation was based on convictions in separate case and Court of Appeals

was reversing convictions) (citing *State v. Brown*, 53 Or App 666, 669, 633 P2d 20 (1981)).

Finally, because we reverse and remand on defendant's first assignment of error, we need not address his second assignment, relating to admission of the laboratory report identifying the discovered substance.

Case Number A130175 and Case Number A130305 reversed and remanded.