Argued and submitted April 30, reversed and remanded June 27, 2012

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

DEWAYNE ERNEST DENNIS,
*Defendant-Appellant.*

Washington County Circuit Court
C092575CR; A145087

282 P3d 955

Andrew D. Robinson, Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

David B. Thompson, Senior Assistant Attorney General, argued the cause for respondent. With him on the brief were John R. Kroger, Attorney General, and Mary H. Williams, Solicitor General.

Before Armstrong, Presiding Judge, and Haselton, Chief Judge, and Duncan, Judge.

DUNCAN, J.

## DUNCAN, J.

In this criminal case, defendant appeals the trial court's judgment convicting and sentencing him for unlawful possession of methamphetamine, ORS 475.894. On appeal, defendant assigns error to the trial court's denial of his motion to suppress evidence obtained as a result of a warrantless search. Defendant consented to the search but argues that his consent was invalid because it was obtained in violation of his right, under Article I, section 9, of the Oregon Constitution to be free from unreasonable searches and seizures.[1] Specifically, defendant argues that his consent was invalid because it was the product of an unlawful extension of an otherwise lawful stop. For the reasons explained below, we agree and, therefore, reverse and remand.

We begin with the facts, which we state consistently with the trial court's findings. *State v. Hall*, 339 Or 7, 10, 115 P3d 908 (2005) (appellate court is "bound by the trial court's findings of historical fact if constitutionally sufficient evidence in the record supports those findings").

On November 14, 2009, Beaverton Police Officer Lutu saw defendant cross a street at a 45-degree angle, in violation of Beaverton City Code, section 6.02.520. Lutu, who was in uniform and driving a marked patrol car, pulled up to defendant and activated his overhead lights to stop defendant for jaywalking. It was cold out, and Lutu noticed that defendant was moving his hands around in his pockets. Lutu was concerned that defendant might have a weapon. Lutu told defendant to keep his hands out of his pockets, and he asked defendant if he had any weapons. Defendant replied that he had "a couple knives."

Lutu asked defendant for identification. Defendant told Lutu that he did not have a driver's license because it had been confiscated after a recent arrest. Defendant gave Lutu his name and date of birth, which Lutu relayed to dispatch to confirm defendant's identity and check for warrants. It took 30 seconds for dispatch to respond.

---

[1] Article I, section 9, of the Oregon Constitution provides, in part, "No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure."

While Lutu and defendant were waiting for an answer from dispatch, defendant put his hands in his coat pockets. Lutu asked defendant if he could pat him down for weapons. Defendant consented, and Lutu began the patdown. Lutu felt a large lump in defendant's left front coat pocket; it was a knife, which he removed and placed on the trunk of the patrol car. Lutu resumed the patdown and felt a medium-sized lump in defendant's right front pants pocket. Defendant told Lutu that the lump was a pocket knife. Lutu removed it. He patted defendant's right front pants pocket again and felt a small lump. He asked defendant what the lump was, and defendant replied that it was "some filling for [his] tooth." Lutu did not believe that the lump was a weapon; nevertheless, he asked if he could remove it, and defendant consented. It was a small, semitransparent container. Lutu asked if he could open it, and defendant consented. Inside the container, Lutu found "a white, crystal-like substance" that he believed to be methamphetamine. He arrested defendant for unlawful possession of methamphetamine.

Defendant moved to suppress the methamphetamine and his statements about it, arguing that the evidence resulted from an unlawful extension of the stop for jaywalking. Specifically, as relevant here, defendant argued that the officer's request for consent to remove the container unlawfully extended the duration of the stop in violation of his rights under Article I, section 9. Defendant relied on *State v. Rodgers*, 219 Or App 366, 372, 182 P3d 209 (2008), *aff'd sub nom State v. Rodgers/Kirkeby*, 347 Or 610, 227 P3d 695 (2010), in which we ruled that an officer conducting a traffic stop "is free to question a motorist about matters unrelated to the traffic infraction during an unavoidable lull in the investigation, such as while awaiting the results of a records check," but an officer "is not similarly free to question the motorist about unrelated matters as an alternative to going forward with the next step in processing the infraction, such as the writing or issuing of a citation." Applying *Rodgers*, defendant asserted that (1) Lutu's request to remove the container extended the stop because it did not occur during an "unavoidable lull" in the stop, *id.*, and (2) the extension was unlawful because it was not independently justified by

reasonable suspicion of criminal activity, *id.*, or an immediate threat of serious physical injury, *State v. Kirkeby*, 220 Or App 177, 187, 185 P3d 510 (2008), *aff'd sub nom State v. Rodgers/Kirkeby*, 347 Or 610, 227 P3d 695 (2010); *see also State v. Amell*, 230 Or App 336, 340, 215 P3d 910 (2009) (applying the officer-safety doctrine in the context of a traffic stop after *Rodgers*).[2]

Accordingly, at the hearing on defendant's motion to suppress, the parties focused on whether Lutu's request to remove the container occurred during an "unavoidable lull." That is, they focused on whether Lutu made the request at a point when he was unable to go forward with the next step in processing the jaywalking violation.

Lutu testified that he could not recall whether he was still waiting to hear back from dispatch when he asked defendant for consent to remove the container. After listening to a recording of Lutu's exchange with dispatch, the court found that dispatch responded 30 seconds after Lutu submitted defendant's information.

Defendant argued that Lutu's request for consent to remove the container could not have occurred before dispatch responded, noting that, after Lutu contacted dispatch, he (1) asked defendant for consent to pat defendant down; (2) patted defendant's coat pocket, removed a knife, and put it on the trunk of the patrol car; (3) patted defendant's pants pocket and removed a pocket knife; and (4) patted defendant's pants pocket a second time. Those actions, defendant argued, would have taken more than 30 seconds. Thus, Lutu's subsequent request to remove the container must have taken place after dispatch responded.

---

[2] In the trial court and on appeal, the parties focus on whether Lutu's request to remove the container from defendant's pants pocket was unlawful. If it was, there is no dispute that Lutu's subsequent request to open the container, his discovery of the methamphetamine, and defendant's statements about the methamphetamine were tainted by that unlawful request. *See Hall*, 339 Or at 36 (evidence obtained as a result of an illegal stop is inadmissible); *see also State v. Huggett*, 228 Or App 569, 578, 209 P3d 385 (2009), *rev dismissed*, 348 Or 71 (2010) (where a stop was unlawfully extended by an officer's request for consent to search the defendant, the evidence discovered during the search was inadmissible); *Kirkeby*, 220 Or App at 187 (same).

The trial court concluded that Lutu did not have reasonable suspicion that the container held drugs. In addition, the trial court appeared to recognize that, because Lutu did not have reasonable suspicion that the container held drugs, whether Lutu's request to remove it was lawful depended on whether the request was made during an unavoidable lull in the traffic stop, that is, whether it occurred before dispatch responded. Because there was no evidence establishing at what point dispatch responded with the information that Lutu needed to proceed with citing defendant, the court was not able to determine whether Lutu's request for consent to remove the container took place before that point or after it. Nevertheless, the court concluded that the request was permissible:

> "It is so close in time that I don't think it matters. If he was able to do all that searching within the 30 seconds that he had, then that's, obviously, great. That's lawful. If [the request for consent to remove the container from defendant's pocket] happened right after [dispatch responded], [Lutu] was in the middle of [the patdown], it's not unreasonable, given what he was dealing with out there at that point."

After the denial of his motion to suppress, defendant waived his right to a jury and tried his case to the trial court on stipulated evidence. The court convicted him of the single charged count of unlawful possession of methamphetamine. This appeal followed.

On appeal, defendant renews the argument that he made in the trial court, asserting that Lutu's request to remove the container unlawfully extended the stop for jaywalking because the request did not occur during an unavoidable lull in the stop and was not justified by reasonable suspicion that defendant was engaged in criminal activity or posed an immediate threat of serious physical injury. The only issue on appeal is whether the request occurred during an unavoidable lull, because, as the trial court concluded and the state does not dispute, Lutu's request to remove the container was not justified by reasonable suspicion that defendant was engaged in criminal activity or posed an immediate threat of serious physical injury.

Whether an officer's conduct constitutes an unlawful extension of a traffic stop is a question of law, which we review for errors of law. *Rodgers/Kirkeby*, 347 Or at 625 (citing *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993)); *State v. Hampton*, 247 Or App 147, 149, 268 P3d 711 (2011) (citing *State v. Gomes*, 236 Or App 364, 370, 236 P3d 841 (2010)).

As mentioned, under *Rodgers*, an officer is free to question a person stopped for a traffic violation "during an unavoidable lull * * *, such as while awaiting the results of a records check," but an officer "is not similarly free to question the motorist about unrelated matters as an alternative to going forward with the next step in processing the infraction, such as the writing or issuing of a citation."[3] 219 Or App at 372; *see also Gomes*, 236 Or App at 371 (stating that the Supreme Court's *Rodgers/Kirkeby* opinion "confirm[ed] our *Rodgers* opinion and our opinion in *State v. Amaya*, 176 Or App 35, 29 P3d 1177 (2001), *aff'd on other grounds*, 336 Or 616, 89 P3d 1163 (2004), that there are no Article I, section 9, implications if an inquiry unrelated to the traffic stop occurs during a routine stop but does not delay it").

The state has the burden of proving that an investigation of an unrelated criminal matter occurred during an unavoidable lull. *State v. Berry*, 232 Or App 612, 616-17, 222 P3d 758 (2009), *rev dismissed*, 348 Or 71 (2010); *State v. Hendon*, 222 Or App 97, 102, 194 P3d 149 (2008); *see also State v. Foland*, 224 Or App 649, 654, 199 P3d 362 (2008), *rev den*, 348 Or 14 (2010) (reversing the trial court's denial of a motion to suppress where "there [was] nothing in the record" indicating that questioning took place during an unavoidable lull). Thus, in a case like this, where the state seeks to rely on the consent of a person stopped for a traffic violation to justify a warrantless search that is unrelated to the reason for the stop and unsupported by reasonable suspicion of criminal activity or an immediate threat of serious physical injury, the state must prove that, when the officer requested consent, the officer did not have the information necessary to "go[ ] forward with the next step in processing the infraction." *Rodgers*, 219 Or App at 372.

---

[3] The parties do not dispute that this case involves a traffic stop.

Here, the state failed to prove that Lutu's request to remove the container occurred during an unavoidable lull in his stop of defendant for jaywalking. In this case, the unavoidable lull was 30 seconds long; it lasted from the point when Lutu provided defendant's identifying information to dispatch until the point when dispatch responded. Lutu testified that he could not recall whether he requested to remove the container before dispatch responded, and the state failed to present any other evidence from which the trial court could find that Lutu's request occurred before dispatch responded. Thus, the state failed to carry its burden of proving that the request occurred during an unavoidable lull in the processing of the stop for jaywalking.

Nevertheless, the state argues that Lutu's request to remove the container did not extend the stop. Specifically, the state argues that the request did not extend the stop in "a constitutionally significant way" because it was "brief" and "occurred more or less simultaneously" with the processing of the stop for jaywalking. In making that argument, the state relies on *Gomes*, 236 Or App 364, in which we held that an officer's inquiry into an unrelated matter during a traffic stop did not unlawfully extend the stop. As explained below, the state's reliance is misplaced. *Gomes* involved a straightforward application of the rule that an officer conducting a traffic stop may inquire about unrelated matters *during* an unavoidable lull in the processing of the traffic stop. It did not involve, and has no bearing on, inquiries made *outside of* an unavoidable lull.

In *Gomes*, an officer stopped the defendant for speeding and for failing to signal a lane change. The officer asked the defendant for her driver's license and vehicle registration. He also asked the passenger, Trahan, who owned the car, for identification. Trahan opened the center console to retrieve his documents, and, as he did, the officer saw an apparently empty hard cigarette package and asked if he could look at it. Before handing the package to the officer, Trahan began dumping it out. The officer saw a pill fall out of the cigarette package, and Trahan volunteered that the pill was a prescription drug that he had received from a friend. Trahan's statement led the officer to investigate further and,

eventually, gain consent to search the car and the defendant's purse. The officer found cocaine in the purse. *Id.* at 368.

The defendant was charged with possession of a controlled substance. She moved to suppress the evidence, including the cocaine, obtained as a result of the officer's request to see the cigarette package, arguing that the request was an unlawful extension of the traffic stop. The trial court denied the motion, concluding that, when the officer asked to see the cigarette package, he had reasonable suspicion of criminal activity. The defendant was convicted. *Id.*

On appeal, the state conceded that the officer did not have reasonable suspicion of criminal activity when he asked to see the cigarette package. But, the state argued, *inter alia,* that the officer's request did not constitute an unlawful extension of the traffic stop because it "occurred while [the officer] was simultaneously attending to another stop-related task—that is, obtaining identification and proof of insurance." *Id.* at 370. We agreed.

After summarizing our decision in *Rodgers* and the Supreme Court's subsequent decision in *Rodgers/Kirkeby,* we confirmed that the unavoidable lull rule that we articulated in *Rodgers* was unaffected by the Supreme Court's *Rodgers/Kirkeby* decision. *Gomes,* 236 Or App at 371. We explained that,

> "under the Supreme Court's *Rodgers* opinion, we have correctly concluded in a number of cases that a police officer unnecessarily and unlawfully extends the duration of a traffic stop when the officer begins a line of questioning unrelated to the traffic stop after having obtained, or instead of obtaining, the information necessary to proceed with citing the defendant."

*Id.* Then we applied that rule to the facts of the case:

> "Here, [the officer] began the inquiries about the cigarette package while [the] defendant and Trahan were *in the process of obtaining and turning over* the licenses, registration, and proof of insurance. The initiation of questioning and processing of the stop occurred more or less simultaneously. * * * *The relevant fact is that the inquiry that transformed the encounter from a routine traffic stop into a more*

*extended criminal investigation occurred during the time that [the officer] was lawfully and expeditiously conducting the traffic stop and \* \* \* did not result in any extension of that stop."*

*Id.* at 372 (emphasis added). Thus, in *Gomes*, we held that the state carried its burden of proving that the officer's request to see the cigarette package occurred during an unavoidable lull; specifically, the state proved that the request occurred "while [the] defendant and Trahan were in the process of obtaining and turning over the licenses, registration, and proof of insurance." *Id.* That is, the state proved that the request occurred when the officer did not have—but was seeking—the information that he needed in order to go forward with the next step in processing the stop.

Thus, contrary to the state's assertion, *Gomes* does not stand for the proposition that an officer conducting a traffic stop may inquire into unrelated matters *close in time* to an unavoidable lull. Instead, *Gomes*, like its predecessors, stands for the proposition that an officer may make such inquiries *during* an unavoidable lull. To hold otherwise would be contrary to the rule that officers may not extend the duration of a traffic stop by inquiring into unrelated matters, a rule that, we have held, applies regardless of the length of the extension. *E.g., State v. Klein*, 234 Or App 523, 528, 228 P3d 714 (2010) (rejecting the state's argument that "[the officer's] questions about drugs took, at most, one minute, and \* \* \* any delay \* \* \* [was] a *de minimis* delay that did not render the duration of the traffic stop constitutionally unreasonable"); *State v. Huggett*, 228 Or App 569, 575, 209 P3d 385 (2009), *rev dismissed*, 348 Or 71 (2010) (officer's request for consent itself constituted an unlawful extension of a traffic stop).

In support of its claim that, under *Gomes*, Lutu's request to remove the container from defendant's pants pocket did not extend the jaywalking stop, the state relies on a single phrase in *Gomes*. As set out above, when describing the traffic stop and questioning in that case, we said that "[the officer] began the inquiries about the cigarette package while [the] defendant and Trahan were in the process of obtaining and turning over the licenses, registration, and

proof of insurance. The initiation of questioning and the processing of the stop occurred *more or less simultaneously.*" *Gomes*, 236 Or App at 372 (emphasis added). The state relies on the phrase "more or less simultaneously" to argue that, in this case, Lutu's request to remove the container from defendant's pants pocket did not unlawfully extend the stop because it occurred "more or less simultaneously with the processing of the stop." Respectfully, the state places more weight on that phrase than it was intended to bear.

In *Gomes*, we said that the initiation of questioning and the processing of the stop occurred "more or less simultaneously" in order to indicate that the two events were not coterminous: they did not start and end at the same time. The processing of the stop had begun and was continuing expeditiously when the officer asked to look at the cigarette package.

Thus, the facts of *Gomes* did not involve an inquiry outside of an unavoidable lull, and, therefore, we did not have occasion to, and did not in fact, revisit the rule that such inquiries are impermissible. Instead, we simply applied the rule. As we emphasized, "the relevant fact" was that the officer's initiation of questioning occurred "during" the time the officer was waiting for the information he needed to proceed with the next step. Thus, the inquiry occurred during an unavoidable lull and, under *Rodgers*, 219 Or App at 372, was permissible.

Unlike in *Gomes*, in this case, the state failed to prove that Lutu's request to remove the container from defendant's pants pocket occurred during an unavoidable lull. Therefore, we conclude that, under *Rodgers*, Lutu's request was an unlawful extension of the jaywalking stop, and the trial court should have granted defendant's motion to suppress evidence resulting from it.

Reversed and remanded.