Argued and submitted March 20, reversed and remanded November 27, 2013

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

GINA ELAYNE MARINO,
*Defendant-Appellant.*

Lincoln County Circuit Court
102835; A148433

314 P3d 984

Ingrid A. MacFarlane, Senior Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

David B. Thompson, Senior Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Duncan, Judge.

DUNCAN, J.

**DUNCAN, J.**

In this criminal case, defendant appeals the trial court's judgment convicting her of unlawful possession of methamphetamine, ORS 475.894. She assigns error to the court's denial of her motion to suppress evidence obtained as a result of a warrantless search of the car she was driving, arguing that the state failed to prove that the search was authorized by an exception to the state and federal warrant requirements. Or Const, Art I, § 9; US Const, Amend IV.[1] The state argued, and the trial court agreed, that the challenged warrantless search was authorized by defendant's consent to an earlier warrantless search. For the reasons explained below, we conclude that defendant's consent to the earlier search did not authorize the later search. Accordingly, we reverse and remand.

We begin with the facts, which we state in accordance with the trial court's findings. *State v. Ehly*, 317 Or 66, 74-75, 854 P2d 421 (1993) (when reviewing a trial court's denial of a motion to suppress, an appellate court is bound by the trial court's findings of fact, provided that the findings are supported by constitutionally sufficient evidence). On July 26, 2010, Lincoln City Police Officer Shawn Carter was on routine patrol, driving a marked patrol car on Highway 101. At approximately 12:30 a.m., he saw a blue car traveling northbound. He ran a records check based on the car's license plate number and learned that the car's registration had expired in 2009. Based on that information, Carter turned on his patrol car's overhead and emergency lights to initiate a traffic stop. In response, the blue car pulled into a parking lot and parked. Carter parked behind it.

---

[1] Article I, section 9, of the Oregon Constitution provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

The Fourth Amendment to the United States Constitution provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Carter approached defendant, the blue car's driver. He asked her for her driver's license, the car's registration, and proof that the car was insured. Defendant told Carter that she did not have a driver's license and gave him her identification card. She also told him that the car did not belong to her and that there were no registration or insurance papers in the car. Carter took defendant's identification card to his patrol car to run a records check.

Lincoln City Police Officer Trenton Morrill came to the parking lot to serve as a cover officer. Carter requested that Morrill ask defendant if she would consent to a search of her car. While Carter remained in his patrol car to complete the records check and write defendant a citation, Morrill approached defendant, who was still seated in the driver's seat of the blue car, and asked her if she had any contraband in the car. Defendant said that she did not. Morrill then asked defendant if she would consent to a search of the car, and defendant said that she would. Defendant got out of the car to allow Morrill to search it.

Morrill noticed that the car was "full of all kinds of personal belongings." He saw a small cooler and opened it, but did not discover any contraband. He then said to defendant, "Wow. You have a whole bunch of clothes in the back of here," or "Wow. There's a whole bunch of clothes in the backseat." According to Morrill, who could not recall defendant's exact words when he testified at the suppression hearing, defendant replied, "I don't really want you to look in there" or "I don't want you looking through that." Morrill understood defendant's reply to mean that "she didn't want [him] to be rooting through in the back seat of the car." Morrill stopped searching and walked back to Carter's patrol car. He told Carter that defendant had told him that she did not want him to look under the clothes in the back seat. He then told Carter, "This is your stop * * * at this point. Whatever you want to do. I'm here to stand by and be your cover officer."

Carter completed the citation and walked back to defendant, while Morrill remained nearby. Defendant had gotten back into the car and was sitting in the driver's seat. Carter spoke to her through the driver's window. He gave

her the citation and told her that she was "free to go."[2] Carter also told defendant that she would not be able to drive away; she would have to leave on foot or wait for someone to come and pick her up. At the suppression hearing, Carter testified that he told defendant that she was "free to go" several times and that he was "very clear about that."

Carter did not walk away from defendant's car after giving defendant the citation. He stayed at her window as she put the citation and her identification card into her purse and got ready to leave the car. Because he was curious, Carter asked defendant why she had limited Morrill's search. Defendant seemed surprised and said that she did not know why Morrill had stopped searching.

Defendant got out of the car and she and Carter took a few steps away from it. While defendant was getting herself organized and ready to leave, Carter asked her if he could search the car. He said, "So you don't mind if I search your car?" or "Why can't I search the rest of your car?" In response, defendant agreed that Carter could search the car, and, during the subsequent search, Carter searched the glove compartment and discovered, *inter alia*, a small baggie that contained a crystalline substance that Carter recognized as methamphetamine and two glass pipes containing a light-colored residue.

The state charged defendant with unlawful possession of methamphetamine, ORS 475.894. Defense counsel filed a motion to suppress the results of Carter's search of defendant's car, arguing that defendant's consent to Carter's search was invalid because it was the product of an unlawful stop, and, therefore, Carter's search violated her state and federal constitutional rights to be free from unreasonable searches and seizures. At the hearing on the motion, defense counsel argued that, although Carter had lawfully stopped defendant for driving a car without a current registration, Carter's conduct after he gave defendant the citation constituted a second stop, and that stop violated defendant's

---

[2] Although Carter had stopped defendant for driving a car without a current registration, during the stop he learned that defendant's driver's license was suspended, and he cited her for driving while suspended. It is not clear from the record whether Carter also cited defendant for driving a car without a current registration and without proof of insurance.

constitutional rights because it was not supported by reasonable suspicion. Relying in part on *State v. Toevs*, 327 Or 525, 964 P2d 1007 (1998), defense counsel argued that, although Carter told defendant that she was free to go, Carter's conduct indicated otherwise, in that he did not walk away from defendant's car after issuing her the citation; instead, he remained by her door and began to question her about why she had limited Morrill's search. According to defense counsel, Carter's actions were akin to those of the officer in *Toevs*, who, at the conclusion of a traffic stop, returned the defendant's identification and told him that he was free to go, but asked for consent to search before giving the defendant the opportunity to leave. 327 Or at 529. Under *Toevs*, defense counsel argued, there must be a "temporal break" between a traffic stop and an unrelated request for consent to a search. In this case, defense counsel posited, there was no such break:

> "So what we have here is from the testimony of the officer, nobody left. Nobody got in their car. Officer Morrill didn't get in his car and drive away. Officer Carter didn't return to his vehicle. He was right there. He moved out of the way so she could get out of the car. But there's no break. There's just no break between the traffic stop in this case and then the request [to] search."

Thus, defense counsel argued, the evidence seized during Carter's search should be suppressed as the product of an unlawful stop.

The state did not respond to defense counsel's argument that Carter's conduct after issuing the citation constituted a second stop. Instead, the state argued that defendant's consent to Morrill's search authorized Carter's later search. The state's theory, as articulated by the prosecutor, was that defendant's consent to Morrill was valid because it was obtained during an "unavoidable lull" in the traffic stop, *State v. Rodgers*, 219 Or App 366, 372, 182 P3d 209 (2008), *aff'd sub nom State v. Rodgers/Kirkeby*, 347 Or 610, 227 P3d 695 (2010), and that, when Carter requested consent to search after he issued defendant the citation and told her that she was free to go, he was simply "clarifying any limitations" that defendant had placed on her initial consent.

The prosecutor agreed with defense counsel that "there wasn't a temporal break," but contended that the trial court did not "need to get into that analysis, because * * * the point of the consent being given was at the conversation with Officer Morrill, and all Officer Carter was doing was confirming how much she had limited that afterwards."

The trial court accepted the state's theory, concluding that defendant's consent to Morrill authorized Carter's later search. The court explained:

> "Okay. I'm going to deny the Motion to Suppress. I think the search was authorized by consent that Morrill got at the time he initially was asked to go up and see if she'd give consent to search the car based on Carter's suspicions.
>
> "[A]nd the temporal lull isn't a part of this one. The consent was there and Carter was clarifying that consent. [Defendant] said, 'Well, go ahead.'"

Thereafter, defendant waived her right to a jury trial and proceeded to a stipulated facts trial. The trial court convicted defendant of unlawful possession of methamphetamine, and this appeal followed.

As mentioned, on appeal, defendant assigns error to the trial court's denial of her motion to suppress, arguing that the state failed to carry its burden of proving that Carter's warrantless search of her car was conducted pursuant to an exception to the state and federal warrant requirements. As in the trial court, the state's only argument in response is that Carter's search was authorized by defendant's consent to Morrill's search. In its brief, the state asserts:

> "Carter's search was lawful under the consent defendant gave Morrill. In short, that search was supported by the valid consent defendant gave Morrill, which was still in place when Carter found the drugs. Whatever the effect of Carter's post-citation exchange with defendant, it did not invalidate the previous consent to search obtained by Morrill."

(Internal footnote omitted.) Thus, the state does not respond to defendant's argument that Carter conducted a second stop that was unsupported by reasonable suspicion, and it does not contend that defendant's consent to Carter was independently sufficient to justify Carter's search.

Although defendant's motion to suppress was based on both the state and federal constitutions, we address only her state claim because it is dispositive. Article I, section 9, protects individuals against unreasonable searches and seizures. Warrantless searches and seizures are *per se* unreasonable unless they fall within "one of the few specifically established and well-delineated exceptions to the warrant requirement." *State v. Davis*, 295 Or 227, 237, 666 P2d 802 (1983) (internal quotation marks omitted). The state bears the burden of proving that a warrantless search or seizure falls within such an exception. *Id.* Whether the state has carried that burden is a question of law, which we review for errors of law. *See id.* at 238 ("Our function is limited to determining whether legal principles were correctly applied.").

Consent is an exception to the warrant requirement. *State v. Weaver*, 319 Or 212, 219, 874 P2d 1322 (1994). To prove that a warrantless search was justified by a defendant's consent, the state must prove that the consent was (1) voluntary and (2) not tainted by prior unlawful police conduct. *State v. Hall*, 339 Or 7, 20-21, 115 P3d 908 (2005); *State v. Rodriguez*, 317 Or 27, 38-41, 854 P2d 399 (1993).[3]

Under Article I, section 9, a police officer may ask a driver to consent to a search during a lawful traffic stop, provided that the request does not extend the duration of the stop. *Rodgers*, 219 Or App at 370-71; *see State v. Gomes*, 236 Or App 364, 371, 236 P3d 841 (2010) (concluding that, after the Supreme Court's decision in *Rodgers/Kirkeby*, "there are no Article I, section 9, implications if an inquiry unrelated to the traffic stop occurs during a routine stop but does not delay it"). Thus, an officer may ask a driver for consent to search during an "unavoidable lull" in a traffic stop, such as when the officer is waiting for the results of a records check. *State v. Dennis*, 250 Or App 732, 737-38, 282 P3d 955 (2012) (applying the "unavoidable lull" analysis); *State v. Jones*, 239 Or App 201, 208, 245 P3d 148 (2010), *rev den*, 350 Or 230 (2011) (same).

---

[3] In *Hall* and *Rodriguez*, the Supreme Court used the phrase "unlawful police conduct" to describe "a governmental act that violated a defendant's rights under Article I, section 9." *Hall*, 339 Or at 12 n 6 (discussing *Rodriguez*, 317 Or at 38 n 12). We do the same here.

But, an officer may not ask a driver for consent to search in lieu of completing a traffic stop. *Rodgers*, 219 Or App at 372; *see Rodgers/Kirkeby*, 347 Or at 623 ("Police authority to detain a motorist dissipates when the investigation reasonably related to that traffic infraction, the identification of persons, and the issuance of a citation * * * is completed or reasonably should be completed."). In other words, the officer may not ask for consent "instead of expeditiously proceeding with the steps necessary to complete the stop." *State v. Nims*, 248 Or App 708, 713, 264 P3d 235, *rev den*, 352 Or 378 (2012); *see State v. Alvarado*, 257 Or App 612, 631, 307 P3d 540 (2013) ("As soon as police were able to issue defendant a citation, their authority to detain defendant evaporated."); *State v. Huggett*, 228 Or App 569, 575, 209 P3d 385 (2009), *rev dismissed*, 348 Or 71 (2010) (an officer may not inquire "about unrelated matters as an alternative to going forward with the next step in processing the [traffic violation], such as the writing or issuing of a citation"). An officer may neither extend a stop nor initiate a second stop without reasonable suspicion to do so. *See Rodgers/Kirkeby*, 347 Or at 623 ("Other or further conduct by the police, beyond that reasonably related to the traffic violation, must be *justified* on some basis other than the traffic violation." (Emphasis in original.)); *State v. Kentopp*, 251 Or App 527, 534, 284 P3d 564 (2012) ("[A]t the point that the officer had the results of the defendant's records check, the officer had all of the information that he needed to complete the traffic stop and, therefore, the officer needed reasonable suspicion to lawfully extend the stop[.]" (discussing *State v. Klein*, 234 Or App 523, 531-32, 228 P3d 714 (2010)).[4]

---

[4] As we have explained, an unlawful extension occurs when an officer, "without letting the person know expressly or by implication that he or she is free to leave, detains the person beyond the time reasonably required to investigate the initial basis for the stop and to issue a citation, without the requisite reasonable suspicion." *Huggett*, 228 Or App at 574 (discussing *Rodgers*, 219 Or App at 371-72); *see, e.g., State v. Ehret (A111248)*, 184 Or App 1, 8-9, 55 P3d 512 (2002) (officer unlawfully detained the defendant when, prior to issuing him a citation, returning his identification, or informing him that he was free to leave, the officer instead left his patrol lights flashing and asked the defendant to get out of the vehicle). An unlawful second stop occurs when an officer "concludes a lawful stop (for example, by telling a person that he or she is free to leave) and then initiates a second stop by questioning the person about unrelated matters without reasonable suspicion of further criminal activity." *Huggett*, 228 Or App at 574 (discussing *Rodgers*, 219 Or App at 371); *see, e.g., Toevs*, 327 Or at 537 (officers unlawfully detained the defendant by continuing to question him after returning

On appeal, defendant does not dispute that Carter lawfully stopped her to investigate a traffic violation. Nor does she dispute that Morrill's request for consent occurred during an unavoidable lull and, therefore, authorized Morrill's search of the car. But, she does dispute the state's claim, which the trial court accepted, that her consent to Morrill's search authorized Carter's later search. For the reasons explained below, we conclude that defendant's consent to Morrill's search expired when Morrill terminated his search and, therefore, did not authorize Carter's later search.

As described, defendant assented to Morrill's request to search. Morrill began his search and then defendant limited her consent; after he remarked that she had a lot of clothing in the back of the car, she told him, "I don't really want you to look in there" or "I don't want you looking though that." Morrill then terminated his search, as evidenced by his actions and the responses by both defendant and Carter. Morrill walked away from defendant's car, and defendant got back in the car and sat in the driver's seat. Morrill told Carter, "This is your stop * * * at this point. Whatever you want to do. I'm here to stand by and be your cover officer[,]" thereby conveying that he was done with his search. Carter completed the citation, issued it to defendant, told her that she was free to go, and watched as she prepared to leave the car.

Thus, it was apparent to defendant that Morrill's search—the only search to which defendant had consented—was over. Just as the scope of a defendant's consent turns on what a "'typical reasonable person would have understood by the exchange between the officer and the suspect[,]'" *State v. Arroyo-Sotelo*, 131 Or App 290, 295, 884 P2d 901 (1994) (brackets in *Arroyo-Sotelo* omitted) (quoting *Florida v. Jimeno*, 500 US 248, 251, 111 S Ct 1801, 114 L Ed 2d 297 (1991)), so, too, does the temporal duration of a given search and, with it, the duration of a suspect's consent. *See State v. Fugate*, 210 Or App 8, 13, 150 P3d 409 (2006) (the scope

his documents and telling him that he was free to leave); *State v. Alvarez*, 234 Or App 544, 546, 550-51, 228 P3d 683, *rev den*, 349 Or 57 (2010) (officers unlawfully detained the defendant when, after giving him a citation and telling him that he was free to leave, the officers stepped back from the defendant's car but asked for consent to search a few seconds later).

of consent "turns on what a reasonable person would have intended"). Where a reasonable person would perceive that a consent search has terminated, the suspect's consent to that search cannot be used to support a later search. *See Arroyo-Sotelo*, 131 Or App at 295 (looking at the "totality of the circumstances of the particular case" when evaluating the scope of consent under Article I, section 9). Under the particular circumstances of this case, defendant's consent expired with the obvious termination of Morrill's search.

Carter's search was a separate search, and it required a separate consent. The state does not argue that it had such a separate consent. Although Carter asked defendant if he could search the car and defendant agreed, the state—which conceded in the trial court that there was no temporal break between Carter's issuance of the citation and his questioning about defendant's consent—has not argued, either in the trial court or on appeal, that defendant's consent to Carter provided a separate justification for Carter's search.

In sum, the state failed to prove that Carter's search was authorized by an exception to the warrant requirement. The state's only argument regarding Carter's search was that it was authorized by defendant's consent to Morrill's search. But the two searches were separate and required separate consents. Therefore, the trial court erred in denying defendant's motion to suppress.

Reversed and remanded.