Argued and submitted February 19, affirmed September 10, petition for review denied December 11, 2014 (356 Or 575)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ZIN MIN AUNG,
*Defendant-Appellant.*

Washington County Circuit Court
C111828CR; A152105

335 P3d 351

Kyle Krohn, Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

David B. Thompson, Senior Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Ortega, Presiding Judge, and DeVore, Judge, and Edmonds, Senior Judge.

ORTEGA, P. J.

## ORTEGA, P. J.

Defendant challenges his conviction for unlawful possession of a controlled substance,[1] arguing that the trial court erroneously denied his motion to suppress evidence obtained during a search of his car. He maintains that the police officer who stopped him for a traffic violation unlawfully extended the duration of that stop by asking a second officer to finish writing the traffic citation while the first officer sought and received defendant's consent to search his car. Defendant suggests that the delay caused by the handoff of the citation—even if only a few seconds—violated Article I, section 9, of the Oregon Constitution, thus requiring the trial court to suppress the evidence that resulted from the search. The state disagrees that there was an unlawful extension of the stop, noting that the officers "expeditiously proceed[ed] with the steps necessary to complete the stop." We affirm.

We review the trial court's denial of defendant's suppression motion for errors of law. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). In doing so, we are bound by the trial court's express and implicit factual findings if there is constitutionally sufficient evidence in the record to support them. *Id.* We state the facts consistently with that standard.

Officer Haugen stopped defendant for failure to obey a traffic control device and an unsignaled lane change. Defendant presented Haugen with his driver's license. Haugen radioed for a cover officer as he returned to his patrol car. Haugen conducted a records check, which came back "clear and valid." He then decided to issue a citation to defendant for an unsignaled lane change. After Haugen began writing the citation, Officer Corning arrived, and Haugen asked him to complete the citation. Corning took over processing the citation, and Haugen approached defendant and asked him to get out of the car. Haugen then asked for and received defendant's consent to pat him down for weapons. Haugen's pat-down did not produce any weapons, but he then asked defendant if he could search his car. Defendant consented, and the search revealed two Oxycodone pills.

---

[1] Defendant was convicted under *former* ORS 475.840(3)(b) (2011), *renumbered as* ORS 475.752(3)(b) (2013).

Defendant admitted to illegally possessing the Oxycodone, and he was ultimately charged with unlawful possession of a controlled substance.

Before trial, defendant moved to suppress evidence obtained in connection with the search of his car, arguing, among other things, that Haugen unnecessarily extended the traffic stop by asking Corning to complete the citation. The trial court denied the motion, finding that Haugen's request for consent occurred while Corning was still filling out the citation and that there was no unlawful extension of the traffic stop. The trial court found defendant guilty after a stipulated facts trial.

Defendant appeals the resulting judgment, reprising his argument from below. He asserts that Haugen, by asking Corning to finish the citation, unlawfully extended the duration of the stop "because physically exchanging the citation delayed the completion of the citation." Defendant recognizes that the exchange between Haugen and Corning "may have added only a few seconds to the duration of the stop" but asserts that *State v. Dennis*, 250 Or App 732, 740, 282 P3d 955 (2012), controls and that, in that case, we held that the rule against extending the duration of a stop "applies regardless of the length of the extension." Defendant argues that "Haugen did not need to ask Corning to finish the citation, and thus did so as an alternative to going forward with his duty to expeditiously complete the stop." Accordingly, defendant maintains that the citation "handoff" between Haugen and Corning extended the duration of the stop, thus subjecting defendant to an unlawful seizure under Article I, section 9.

The state counters that *Dennis* does not control and that the officers did not unlawfully extend the stop in this case. The state proposes that the proper inquiry is whether the officers were "expeditiously proceeding with the steps necessary to complete the stop," not whether the stop was completed in the *most* expeditious time humanly possible. The state contends that the officers expeditiously moved the investigation and citation process along, such that the traffic stop was not unlawfully extended. The state distinguishes *Dennis*, complaining that that case occurred in a different

context—where an officer inquired about a criminal matter unrelated to the traffic stop *instead of* proceeding with the steps necessary to complete the stop—whereas here, Haugen's inquiry occurred while Corning was expeditiously completing the citation.

We begin with the general framework that governs whether a traffic stop is unlawfully extended:

"[A]lthough an officer is free to question a motorist about matters unrelated to the traffic infraction during an unavoidable lull in the investigation, such as while awaiting the results of a records check, that officer is not similarly free to question the motorist about unrelated matters *as an alternative* to going forward with the next step in processing the infraction, such as the writing or issuing of a citation. When an officer has all of the information necessary to issue a citation but instead delays in processing it or in telling the motorist that he or she is free to go, the stop is no longer lawful unless the officer has reasonable suspicion of further criminal activity."

*State v. Rodgers*, 219 Or App 366, 372, 182 P3d 209 (2008), *aff'd sub nom State v. Rodgers/Kirkeby*, 347 Or 610, 227 P3d 695 (2010) (emphasis added).

Our decision in *Dennis* was a relatively straightforward application of that framework in the context of whether an officer questioned a motorist about unrelated matters instead of going forward with processing the traffic citation. In *Dennis*, a police officer stopped the defendant for jaywalking. 250 Or App at 733. The officer radioed dispatch to confirm the defendant's identification and check for warrants. While waiting for dispatch to respond, the officer asked for consent to search the defendant's pockets. *Id.* at 734. The defendant consented, and, among other things, the officer discovered a small container. The officer asked for consent to open it, which the defendant granted, and the officer discovered methamphetamine. *Id.* The defendant moved to suppress the methamphetamine, arguing that the officer had unlawfully extended the stop. The question at the suppression hearing was whether the officer's request to open the container occurred during an "unavoidable lull"— *i.e.*, whether the request occurred at a point when the officer

was unable to go forward with the next step in processing the jaywalking violation. *Id.* at 735. The trial court found that it took 30 seconds for dispatch to respond. However, the officer testified at the suppression hearing that he could not remember if dispatch had responded to his "warrants check" by the time that he had asked for consent to open the container. The court decided that, even though it could not determine if the officer's request for consent to open the container occurred before or after dispatch responded, the request was permissible even if the request occurred "right after" dispatch responded, because it was "so close in time." *Id.* at 736.

On appeal, first, we explained that an officer can question a motorist about unrelated matters during an unavoidable lull in the stop, but is not similarly free to question a motorist about unrelated matters as an alternative to going forward with the next step in processing the infraction. *Id.* at 737. We also noted that the state had the burden to prove that a request unrelated to the reason for the stop—in *Dennis*, the request to open the container—occurred during an unavoidable lull. *Id.* Given that framework, we concluded that the state had failed to prove that the officer's request to open the container occurred during an unavoidable lull. *Id.* at 738. Dispatch had taken 30 seconds to respond to the officer's inquiry, and the officer could not remember if his request for consent had occurred before or after that 30 second "unavoidable lull." Accordingly, we concluded that there was no evidence from which the trial court could find that the request occurred before dispatch had responded; therefore, the state had failed to carry its burden to prove that the unrelated inquiry had occurred during an unavoidable lull. *Id.* In doing so, we rejected the state's argument that the stop was not extended "in a constitutionally significant way" because we concluded that unrelated inquiries, "no matter how long," that occur outside of the unavoidable lull unlawfully extend the stop. *Id.* at 740.

Defendant asserts that *Dennis* stands for the proposition that any "unjustified" act of an officer that extends the duration of a traffic stop for any amount of time is an unlawful seizure under Article I, section 9. We disagree. In *Dennis*, we simply held that a traffic stop is unlawfully

extended if an officer inquires into matters unrelated to the stop outside of an "unavoidable lull"—no matter how long the unrelated inquiry takes. The Article I, section 9, problem that we identified in *Dennis* was that the officer began making unrelated inquiries instead of processing the traffic citation. In short, *Dennis* stands for the unremarkable proposition that an officer unlawfully extends a traffic stop if the officer ceases to process the citation and instead, without justification, begins making inquiries unrelated to the traffic stop. It does not support defendant's assertion that Article I, section 9, is implicated every time there is a delay in an officer's processing of a traffic stop.

Moreover, *State v. Nims*, 248 Or App 708, 713, 274 P3d 235 (2012), illustrates the proper analysis when—like in this case—two officers are on the scene of a traffic stop. In that case, we held that where two officers were present on the scene of a traffic stop and one officer sought consent to search the defendant's car while the other officer processed the traffic citation, there was no unlawful extension of the stop. *Id.* at 714. There, two officers pulled over the defendant for a traffic infraction. *Id.* at 710. The first officer acquired the defendant's identification and returned to his patrol car to write a citation. In the meantime, the second officer asked the defendant about drugs and weapons, and requested consent to search the defendant's car. The subsequent search revealed illegal drugs. The trial court granted the defendant's motion to suppress, concluding that the police had unlawfully extended the stop. *Id.* at 711.

We reversed, noting that whether an officer unlawfully extends a stop depends on whether the officer makes the unrelated inquiry *instead of expeditiously proceeding* with the steps necessary to complete the stop. *Id.* at 713. In *Nims*, we noted that the first officer "was continuing, without delay, toward the completion of the traffic stop" and, because the second officer requested consent to search while the first officer was writing the citation, the request did not unlawfully extend the traffic stop. *Id.* at 713-14.

Here, Haugen did not question defendant about matters unrelated to the traffic stop "as an alternative" to processing the traffic citation. There is no dispute that

Haugen properly stopped defendant for a traffic violation and then proceeded with standard procedure—he obtained defendant's identification and returned to his patrol car to run a "records check." When the check came back "clear" he began to write a citation for the traffic violation. As the trial court found, Corning arrived before Haugen finished writing the citation, and Haugen asked Corning to finish the citation while he spoke to defendant. Corning, without delay, continued writing the citation, and, before he completed it, Haugen had performed the consent search that led to the discovery of the Oxycodone. Therefore, defendant consented to the search of his car while the officers were expeditiously conducting the traffic stop. The trial court correctly denied defendant's motion to suppress.

Affirmed.