ORTEGA, P. J.
*1197 *694 Defendant challenges his conviction for unlawful delivery of heroin and unlawful possession of heroin, methamphetamine, and controlled substances, ORS 475.850 ; ORS 475.854 ; ORS 475.894 ; ORS 475.752(3) and (3)(c). He assigns error to the trial court's denial of his motion to suppress evidence obtained during what he contends was an unlawful extension of a traffic stop to call his probation officer. We conclude that, because the call to defendant's probation officer did not actually delay the processing of the traffic citation at issue, the stop was not unlawfully extended, and the trial court did not err in denying defendant's motion. Accordingly, we affirm.
We review the denial of a motion to suppress for legal error and are bound by the trial court's express factual findings if evidence in the record supports them. State v. Ehly , 317 Or. 66, 74-75, 854 P.2d 421 (1993). Accordingly, we state the facts consistently with the trial court's factual findings.
Officer Haugen stopped defendant in Washington County for failing to signal when changing lanes, a minor traffic offense. When Haugen reached defendant's car, he noticed that defendant and his passenger were nervous and pale, and that both had sores on their arms consistent with "people who use heroin." Haugen asked defendant for his license, registration, and insurance information and then contacted dispatch to run it through the law enforcement database system, as is standard practice. Haugen testified that dispatch performed a records check, which included a review of defendant's driving status and a warrant inquiry, and informed Haugen that defendant was on post-prison supervision out of Deschutes County and that there was a note in his record directing that "[a]ny law enforcement contact with this offender, please call" probation officer Frank Dietsch. Haugen had never seen such a notation before, but proceeded to dial Dietsch while working on "paperwork stuff" by filling out the citation. Dietsch answered and told Haugen that defendant must consent to a search because he was on post-prison supervision. Dietsch attempted to enlist *695 Haugen to search the car on Dietsch's behalf, but Haugen testified that he acted on his own.
The call between Haugen and Dietsch lasted less than five minutes. After that call and while Haugen was still typing up the citation in his car, Officer Andler spontaneously showed up, and Haugen asked him to continue to process the ticket. While he did so, Haugen approached defendant's car and asked him if "he was in possession of any weapons, any drugs, or any illegal documents," and defendant said no. Haugen then asked defendant to step out of the car and to consent to a search. Defendant refused and, when asked why, responded that he had a bottle of used syringes that he had not yet disposed of. Haugen told defendant he did not care about that and again asked for consent to search, which defendant granted. A third officer arrived and assisted Haugen in searching the car, where they found illegal drugs.
The trial court made several factual findings relevant on appeal. First, the court found that the entire encounter lasted 19 minutes. The court also found, based on Haugen's testimony, that it would normally take about 15 minutes to process a citation, and that to the extent that this stop lasted slightly longer, that was reasonably attributable to recent changes in the procedures for processing tickets. Finally, the court found that Haugen continued to process the citation even as he had the conversation with Dietsch, and that the two things occurred "simultaneous[ly]."
On appeal, defendant concedes that he was lawfully stopped for failing to signal when changing lanes, but argues that Haugen extended the traffic stop, resulting in an unlawful seizure. According to defendant, the call to his probation officer was not reasonably related to the traffic stop and was therefore unlawful-that is, Haugen's questioning did not occur during an unavoidable lull, nor was it justified by reasonable suspicion to believe that his safety or the public safety was threatened. Defendant asserts that, after obtaining his driver's license, car registration, and insurance information, Haugen had *1198 all the information to complete the citation. According to defendant, the call to Dietsch was not reasonably related because the note was *696 vague and, without more information, there was no basis to call his probation officer instead of processing the citation. Additionally, defendant asserts that Haugen intentionally extended the stop in order to obtain his consent to search. Defendant claims that the call to his probation officer, even if it took at least five minutes, allowed Andler to come to the scene and to take over processing the traffic ticket so that Haugen could ask defendant questions. Because of that, defendant contends that he was not able to end the encounter with Haugen and that his liberty was restricted long enough to allow Haugen and the third officer to obtain incriminating evidence against him.
The state responds that the call to defendant's probation officer was reasonably related to issuing a traffic citation and, therefore, was not an unlawful extension of the stop. The state argues that if particularized information is discovered during a records check, then the actions of the officer based on that information are within the scope of the traffic stop. The state contends that the note provided Haugen with reason to believe that the call was necessary. Further, the state points out that Haugen continued to process the citation while speaking with Dietsch and that, consequently, there was no delay since the call was part of investigating and issuing a citation. The state asserts that the court implicitly found that the traffic stop would not have turned out differently without the call because the court generally concluded that Haugen's questions occurred during an unavoidable lull as the ticket was still being processed.
We conclude that the information that defendant seeks to suppress was not obtained as a result of an extension of the stop.[1] Article I, section 9, of the Oregon Constitution *697 allows an officer to temporarily detain a person for investigatory purposes. State v. Ashbaugh , 349 Or. 297, 308-09, 244 P.3d 360 (2010). That is, an officer can lawfully stop a person for a noncriminal traffic violation to investigate the offense and issue a citation without a warrant. State v. Rodgers/Kirkeby , 347 Or. 610, 623-24, 227 P.3d 695 (2010). "[W]hether an officer unlawfully extends a stop depends on whether the officer makes [an] unrelated inquiry instead of expeditiously proceeding with the steps necessary to complete the stop." State v. Aung , 265 Or.App. 374, 379, 335 P.3d 351, rev. den. , 356 Or. 575, 342 P.3d 88 (2014) (emphasis in original).
Defendant's argument on appeal is that the notation on defendant's record was a constitutionally insufficient basis for Haugen to extend the traffic stop in order to investigate matters unrelated to that stop. We need not resolve that question, because it is predicated on the assumption that the traffic stop was actually extended. The trial court implicitly found that it was not, and there is evidence to support that finding-specifically, the evidence that Haugen talked with Dietsch "simultaneously" to processing the citation, and that Haugen's questions to defendant occurred while Andler continued to process the citation. Therefore, defendant cannot show that Haugen's questions about drugs and requests for consent to search occurred during any 'extension' of the stop beyond the time ordinarily required.
Affirmed.

In the alternative, defendant argues that, even if there was not an extension of stop, Haugen acted unlawfully when he inquired about matters unrelated to the stop-specifically when he asked defendant if he was "in possession of any weapons, any drugs, or any illegal documents." We do not address defendant's alternative arguments because our case law establishes that an officer conducting a traffic stop "is free to question a motorist about matters unrelated to the traffic infraction during an unavoidable lull in the investigation, such as while awaiting the results of a records check." State v. Rodgers , 219 Or.App. 366, 372, 182 P.3d 209 (2008), aff'd sub nom. State v. Rodgers/Kirkeby , 347 Or.610, 227 P.3d 695 (2010). See State v. Dennis , 250 Or.App. 732, 734, 282 P.3d 955 (2012) (restating the "unavoidable lull" rule from State v. Rodgers ). See State v. Nims , 248 Or.App. 708, 714 n. 2, 274 P.3d 235, rev. den. , 352 Or.378, 290 P.3d 814 (2012) (rejecting defendant's argument that the unavoidable lull rule was overruled in Rodgers/Kirkeby ). Under that standard, the question in this case was lawful.