SHORR, J.
*316 *417 Defendant appeals a judgement of conviction for one count of unlawful possession of methamphetamine. ORS 475.894. On appeal, he raises one assignment of error, contending that the trial court erroneously denied his motion to suppress physical evidence found when law enforcement officers searched his car following defendant's consent to the search. More specifically, defendant argues that those officers violated his right to be free from unlawful search and seizure under Article I, section 9, of the Oregon Constitution and the Fourth Amendment to the United States Constitution by unlawfully extending the stop at two points: (1) when one of the officers asked for consent to search defendant's car before the other officer finished issuing defendant citations; and (2) when the requesting officer then searched defendant's car based on that consent. Further, defendant contends that he was illegally seized for a second time when an officer physically removed defendant from his vehicle to search it and, consequently, evidence that defendant later voluntarily provided to another officer and comments that he made after that seizure were unlawfully obtained. As we discuss below, we first conclude that defendant's argument regarding the officer's request for consent to search defendant's car is unpreserved and, thus, decline to reach the merits of that argument. As to defendant's other arguments, we disagree with defendant and, for the reasons stated below, affirm the decision of the trial court.
We review the trial court's denial of defendant's suppression motion for errors of law. State v. Aung , 265 Or.App. 374, 375, 335 P.3d 351, rev. den. , 356 Or. 575, 342 P.3d 88 (2014). When undertaking that review, we are bound by the trial court's express and implicit factual findings if there is constitutionally sufficient evidence in the record to support them. Id. We state the facts consistently with that standard.
Defendant was initially stopped by Portland Police Officers Winkel and Shelton for having expired tags. After pulling defendant over, Winkel asked defendant for his license, registration, and proof of insurance. Defendant responded that he did not have any of those documents, but did provide Winkel with his identifying information so that *418 Winkel could perform a records check. Winkel returned to his car and performed the records check of defendant. The records check revealed that defendant's car had previously been involved in a drug offense.
Winkel and Shelton decided to cite defendant for driving without insurance, driving while suspended, and driving with expired tags. After that decision was made, Shelton immediately began working on issuing those citations while Winkel returned to defendant's car. While at defendant's car, Winkel asked defendant if he could search defendant and his car. Defendant only approved a search of his car. While Winkel was inquiring as to consent, Shelton continued work on issuing defendant citations.
After receiving consent to search defendant's vehicle, Winkel immediately asked defendant to leave his vehicle. As defendant got out of the car, Winkel asked that defendant place his hands on his head with his fingers interlaced. Defendant complied and, as he got out, Winkel placed his hands on those interlaced fingers to help control defendant as he got out of the car. After getting out of the car, and in response to an inquiry from Winkel, defendant indicated that he was carrying a knife and gave that knife to Winkel. Winkel then patted defendant down and asked him to sit down on the curb behind his car while Winkel searched the car. Defendant did not feel that Winkel ordered him to sit there, but rather believed that Winkel was *317 merely requesting it. Shelton left the police car to stand near defendant while Winkel was conducting his search to provide support and ensure Winkel's safety. Shelton brought her citation book with her while she stood by defendant, and continued working on the citations while also taking time to watch and interact with defendant.
The search took between 10 to 15 minutes. Early in that search process, Winkel found brass knuckles under the driver's seat of the car. At that point, Winkel believed that he had at least reasonable suspicion to believe that defendant had committed the crime of carrying a concealed weapon. Later in the search of the car, Winkel also found a crystalline, white substance that he believed to be methamphetamine. After that discovery, defendant made incriminating *419 statements and informed Shelton that he had methamphetamine in his pocket. On request, defendant gave Winkel the narcotics. Winkel and Shelton then arrested defendant. After the discovery of methamphetamine, Winkel and Shelton decided not to issue defendant traffic citations, and the citations were never completed.
Defendant was charged with unlawful possession of methamphetamine. Defendant filed a motion to suppress the evidence found during the search of his car and the evidence that he had turned over to the officers after that search. In that motion, defendant argued that the traffic stop was illegally extended when Winkel began conducting the consent search of defendant's car because Shelton was impeded in completing her citations when she had to cover defendant. A hearing on that motion was held where Winkel, Shelton, and defendant all testified. At that hearing, defendant also argued that the methamphetamine he gave to police and the incriminating statements he made should be suppressed because Winkel unlawfully seized defendant for a second time when he placed his hands on defendant's interlaced fingers as he was directing defendant out of the car.
The trial court ruled from the bench that, regarding the search of defendant's vehicle, "the inquiry * * * was reasonable," "consent was valid," and that, as a result, the search was not "overly intrusive" because "courts are [not] putting time limitations on the search itself." The court made no explicit ruling on defendant's secondary seizure argument. However, the court implicitly disagreed with that argument when it denied defendant's motion to suppress.
A short bench trial was held, after which the court entered a judgment convicting defendant of unlawful possession of methamphetamine. ORS 475.894. Defendant appeals that judgment.
As noted, on appeal, defendant assigns error to the trial court's denial of his motion to suppress. Specifically, defendant contends that the trial court erred in three respects. First, defendant contends that the court erred when it concluded that Winkel's request for consent to search defendant's car was not an extension of the traffic stop. Second, *420 defendant argues that the court erred when it concluded that Winkel's actual search of defendant's car was a lawful extension of the traffic stop. Finally, defendant asserts that the court erred when it concluded that defendant was lawfully seized by both officers when he was removed from the car prior to the consent search.
We first address defendant's argument that Winkel unlawfully extended the traffic stop when he asked for consent to search defendant's vehicle. We decline to reach the merits of that argument because it is unpreserved.
Generally, an issue not preserved in the trial court will not be considered on appeal, unless that error is plain. Ailes v. Portland Meadows, Inc. , 312 Or. 376, 380, 823 P.2d 956 (1991). To preserve an argument before the trial court, "a party must provide the trial court with an explanation of his or her objection that is specific enough to ensure that the court can identify its alleged error with enough clarity to permit it to consider and correct the error immediately, if correction is warranted." State v. Wyatt , 331 Or. 335, 343, 15 P.3d 22 (2000). Here defendant failed to preserve his error before the trial court and does not claim that the error was plain.
*318 Defendant failed to preserve his argument because he failed to provide the trial court with an objection, let alone "an explanation of his or her objection that [was] specific enough to ensure that the court [could] identify its alleged error." Id. In fact, defendant, in both his suppression motion and at the suppression hearing, expressly disavowed the notion that he was raising the issue that he now asks us to review. Indeed, in his suppression motion, defendant expressly conceded the position he now advances, stating, "When Officer Winkel asked defendant for consent to search the vehicle for drugs, the request itself and defendant's response did not extend the traffic stop." (Emphasis added.) Similarly, at the suppression hearing, defendant's counsel reiterated multiple times that he was not arguing that Winkel's request for consent unlawfully extended the stop. Finally, in his rebuttal argument, defendant's counsel opined that every case cited by the parties were "all talking about the inquiry did not extend the traffic stop. I'm making *421 a different argument, the actual search extended the traffic stop because of how the officers handled it." Given defendant's repeated statements disavowing the notion that he was presenting the argument to the trial court that he now advances before us, we conclude that the issue was not properly preserved in the trial court. Accordingly, we decline to reach the merits of defendant's first argument.
We turn next to defendant's second argument-that the trial court erred because the consent search of his car itself constituted an unlawful extension of the traffic stop under both Article I, section 9, and the Fourth Amendment. As discussed below, we disagree with defendant and reject his argument.
We first address defendant's argument under the Oregon Constitution. We review the trial court's denial of defendant's suppression motion for errors of law. Aung , 265 Or.App. at 375, 335 P.3d 351. Article I, section 9, provides, in part, that "[n]o law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure[.]" When officers conduct a lawful traffic stop, those officers have seized the driver of the vehicle under Article I, section 9. State v. Rodgers/Kirkeby , 347 Or. 610, 623, 227 P.3d 695 (2010). Police authority to detain a motorist as part of a traffic stop "arises out of the facts that created probable cause to believe that there has been unlawful, noncriminal activity, viz. , a traffic infraction." Id. Consequently, police authority to detain a motorist during a traffic stop "dissipates when the investigation reasonably related to that traffic infraction, the identification of persons, and the issuance of a citation (if any) is completed or reasonably should be completed." Id. Therefore, any conduct by the police during the traffic stop, "beyond that reasonably related to the traffic violation, must be justified on some basis other than the traffic violation." Id. (emphasis in original).
Typically, the required justification to extend a traffic stop is reasonable suspicion that a crime has been committed. See, e.g. , State v. Fair , 353 Or. 588, 603, 302 P.3d 417 (2013) (noting "[t]emporary detention for investigation requires * * * reasonable suspicion");
*422 State v. Marino , 259 Or.App. 608, 615, 314 P.3d 984 (2013) (holding that "[a]n officer may neither extend a stop nor initiate a second stop without reasonable suspicion to do so"); State v. Raney , 215 Or.App. 339, 343, 168 P.3d 803 (2007), modified on recons. , 217 Or.App. 470, 175 P.3d 1024, rev. den. , 344 Or. 671, 189 P.3d 26 (2008) (holding that "the extension of a traffic stop beyond the reasonable time to complete the traffic citation that has the effect of detaining the driver must be supported by reasonable suspicion"). Here, the state argues that the justification to extend the traffic stop is defendant's consent to search his car, which permissibly extended the stop at least during the time necessary to complete that search.
There is no dispute that the initial seizure of defendant as a result of the traffic stop was lawful. Neither party disputes that defendant gave consent to search his car, although that search was unrelated to the traffic violation. Further, it is undisputed that Winkel did not have reasonable suspicion justifying the search-any reasonable suspicion of a possible crime arose later *319 when Winkel found the brass knuckles under the driver seat during the search. Finally, neither party disputes that the consent search extended the traffic stop.[1] Thus, the question before us is whether lawfully obtained consent can provide reasonable grounds for extending a traffic stop to conduct the consented-to search. We conclude that it can.
Consent is an exception to the warrant requirement of Article I, section 9. Marino , 259 Or.App. at 614, 314 P.3d 984. Here, defendant was already lawfully seized as part of the traffic stop when he consented to the search of his car. When a motorist consents to a search of his or her car while already detained during a traffic stop, it is implicit within the consent that that detention may be extended while the consented-to *423 search is conducted. Thus, when defendant consented to the search, he necessarily consented to the extension of his seizure for at least as long as it was necessary for officers to conduct the consented-to search or until defendant revoked that consent. The question is, then, whether defendant's consent to the extension of the seizure, which he was already subject to, was legal under Article I, section 9. If defendant's consent was legal,[2] then that consent justifies the extension of the traffic stop. Giving due consideration to the nature of consent searches and the fact that we have already held that consent searches conducted immediately after a traffic stop do not violate Article I, section 9, we conclude that defendant could lawfully consent to the extension of his preexisting detention so that Winkel could conduct the consented-to search.
For a police-citizen encounter to be considered a seizure, an officer implicitly or explicitly "must convey to the person with whom he is dealing, either by word, action, or both, that the person is not free to terminate the encounter or otherwise go about his or her ordinary affairs." State v. Backstrand , 354 Or. 392, 401, 313 P.3d 1084 (2013) (emphasis added). Although, during a consent search conducted during a traffic stop, the person consenting to the search is not free to terminate the traffic stop, that person is free to initially refuse consent or, if consent is given, to terminate the extension of the seizure at any time by revoking consent to the search. See State v. Ford , 220 Or.App. 247, 251, 185 P.3d 550 (2008) (noting that an officer may only search a person's property pursuant to a person's consent until that person has "expressly revoked that consent"). As a result, the extension of a traffic stop to conduct a lawfully consented-to search is not like other extensions of seizures because the person being searched can initially refuse or "unilaterally end" the extension "at any time." Rodgers/Kirkeby , 347 Or. at 622-23, 227 P.3d 695 (noting that a seizure does not occur where a person "may unilaterally end [the] officer-citizen encounter at any time").
In that way, the extension of the traffic stop caused by the consent search is just like the extension of the police-citizen encounter caused when an officer conducts a consent *424 search of a car after completing the traffic stop. We have already upheld the lawfulness of that type of encounter under Article I, section 9. See State v. Hampton , 247 Or.App. 147, 154, 268 P.3d 711 (2011), rev. den. , 352 Or. 107, 284 P.3d 485 (2012) (holding that, even though a consent search conducted immediately after a traffic stop "extended the encounter between defendant and the officer," it did not "result in an extension of the initial stop"). To conclude that a consent search conducted during a traffic stop is constitutionally different than a consent *320 search conducted immediately after that traffic stop would impose an unnecessary and unreasonable sequencing limitation on officers for no real purpose. As a result, we conclude that "the time the officer took to search defendant's car based on defendant's voluntary consent did not [unjustifiably] extend the traffic stop." Hampton , 247 Or.App. at 153, 268 P.3d 711.
In a memorandum of supplemental authority, defendant contends that our decision should be controlled by State v. Reich , 287 Or.App. 292, 403 P.3d 448 (2017). Defendant's reliance on Reich is misplaced. The question on appeal in Reich was "whether [a] request to search defendant's person * * * took place during an 'unavoidable lull' in the traffic stop." Id. at 298, 403 P.3d 448 (emphasis added). We did not address the question at issue here-i.e. , whether conducting the already consented-to search unjustifiably prolonged the traffic stop. Therefore, Reich does not control this case, and the trial court did not err in concluding that defendant's traffic stop was not unlawfully extended by the consent search under Article I, section 9.
We next turn to defendant's contention that the trial court erred in concluding that the traffic stop was lawfully extended under the Fourth Amendment by Winkel's consent search. We also find that argument unconvincing.
Fourth Amendment law on the extension of traffic stops closely mirrors the law under Article I, section 9. In Rodriguez v. United States , --- U.S. ----, 135 S.Ct. 1609, 1615, 191 L.Ed.2d (2015), the United States Supreme Court held that, under the Fourth Amendment, like under Article I, section 9, officers may not "conduct certain unrelated checks during an otherwise lawful traffic stop * * * in a way that prolongs the stop" absent an additional justification for the *425 extension of the detention. Accord Rodgers/Kirkeby , 347 Or. at 623, 227 P.3d 695 (holding that any conduct by the police during the traffic stop, "beyond that reasonably related to the traffic violation, must be justified on some basis other than the traffic violation" (emphasis in original)). Given the similarity of the Court's interpretation of the Fourth Amendment under Rodriguez and our interpretation of Article I, section 9, it is unsurprising that the jurisdictions that have addressed whether a validly consented-to search during a traffic stop unlawfully extends the permissible time of the stop under the Fourth Amendment post- Rodriguez have reached the same conclusion that we have under Article I, section 9. See Wayne R. LaFave, 4 Search and Seizure § 9.3(e) (5th ed 2017) (noting that, based on a review of relevant Fourth Amendment case law, "[i]f the seeking of the consent was itself legitimate, chances are the consent itself will be upheld as being voluntary rather than coerced, and that the subsequent delay required to make the consented-to search will extend the permissible time of the stop" (footnote omitted)).
For instance, the United States Court of Appeals for the Fourth Circuit has stated that, "[i]f a traffic stop is extended in time beyond the period that the officers are completing tasks related to the traffic infractions, the officers must either obtain consent from the individuals detained or identify reasonable suspicion of criminal activity to support the extension of the stop." United States v. Hill , 852 F.3d 377, 381 (4th Cir. 2017). Similarly, the Seventh Circuit concluded that " 'the relevant focus in determining whether the seizure [in the form of a traffic stop] was reasonable in duration is the time between its initiation and the [defendant's] consent [to search the vehicle]' " because consent renders a subsequent search, including the detention necessary to conduct the search, reasonable. United States v. Ruiz , 785 F.3d 1134, 1144 (7th Cir. 2015) (quoting United States v. Taylor , 596 F.3d 373, 376 (7th Cir.), cert. den. , 561 U.S. 1017, 130 S.Ct. 3485, 177 L.Ed.2d 1076 (2010) (brackets in Ruiz )). As noted, other courts have reached similar conclusions. See, e.g. , People v. Chavez-Barragan , 379 P.3d 330, 336 (Colo. 2016) ("A longer detention or a search is permissible if the individual's consent has been obtained." (Internal quotation marks and brackets omitted.)).
*426 Given the similarity between Article I, section 9, and the Fourth Amendment case law regarding the issue in this case, we agree with the above cited cases and conclude that *321 consent can provide adequate justification for the extension of a traffic stop under the Fourth Amendment for the same reasons it provides adequate justification under Article I, section 9. As a result, the trial court did not err in concluding that Winkel's consent search of defendant's car was a lawful extension of the traffic stop under the Fourth Amendment.
Finally, we turn to defendant's argument that the trial court erred in failing to suppress the statements that he made and evidence found on his person after defendant was removed from the car so that Winkel could search it. Defendant contends that he was unlawfully seized for a second time because Winkel physically removed him from his car and guided him away from the car to the curb to conduct the consent search. Defendant contends that that seizure resulted in him making incriminating statements and providing Shelton with physical evidence from his person. Here, assuming that defendant was in fact seized for a second time when Winkel removed him from his car, we conclude that defendant's incriminating statements and the discovery of the physical evidence on defendant was not caused by an exploitation of that purportedly unlawful seizure.
Under an exploitation analysis, the state has the burden to prove that the evidence discovered was independent of, or only tenuously related to, the unlawful police conduct. State v. Lowell , 275 Or.App. 365, 375, 364 P.3d 34 (2015). The state can disprove exploitation by showing one of three things: "(1) the police inevitably would have obtained the evidence through lawful procedures"; "(2) the police obtained the evidence independently of the illegal conduct"; or "(3) the illegal conduct was independent of, or only tenuously related to the disputed evidence." State v. Hensley , 281 Or.App. 523, 534, 383 P.3d 333 (2016) (internal quotation marks and ellipses omitted).
Here, the state argues that the officers did not obtain the disputed evidence by exploiting the allegedly illegal second *427 seizure of defendant because, the state argues, that seizure had ended by the time defendant made the incriminating statements and turned over the physical evidence on his person. We understand that argument to be that the officers did not exploit the allegedly illegal second seizure-assuming that one occurred-because the unlawful conduct was "independent of, or only tenuously related to the disputed evidence." Id. (internal quotation marks omitted). We agree.
As the state correctly points out, assuming the actions that defendant alleges actually constituted an illegal second seizure, defendant was no longer subject to that seizure when the evidence he wishes to suppress was collected. "A seizure ends when a reasonable person under the totality of the circumstances would no longer believe that his or her liberty is being restricted." Lowell , 275 Or.App. at 373, 364 P.3d 34. Though the trial court did not make explicit factual findings regarding defendant's argument, defendant's own testimony supports the trial court's ruling. See Aung , 265 Or.App. at 375, 335 P.3d 351 ("[W]e are bound by the trial court's * * * implicit factual findings if there is constitutionally sufficient evidence in the record to support them."). Defendant's testimony at the suppression hearing indicates that, after Winkel patted him down, defendant no longer felt that he was being compelled to remain in one place beyond his need to stay near the car until the conclusion of the traffic stop.
Given defendant's description of the events surrounding the alleged second seizure, we conclude that, given the totality of the circumstances, a reasonable person would not have believed that he was subject to the increased deprivation of his liberty caused by the second seizure after Winkel patted defendant down. As a result, although defendant was undeniably detained at the point that he made the incriminating statements and gave Winkel the methamphetamine on his person, that detention was due to the first seizure-i.e. , the original traffic stop-not due to the alleged second seizure. Further, defendant's testimony illuminates the fact that the allegedly illegal seizure did not affect his later decision-making process, as he no longer felt coerced by the officers after he sat down, and nothing in the record indicates that the officers *322 found evidence or information during that *428 short detention that they "traded on" to coerce defendant's statements and voluntary relinquishment of evidence. State v. Unger , 356 Or. 59, 80-81, 333 P.3d 1009 (2014) (noting that evidence is gained in exploitation of a prior illegality where police "traded on" their unlawful conduct or the illegal conduct was "likely to influence improperly a defendant's" disclosure of evidence). Therefore, the evidence defendant sought to have suppressed was not gathered by exploiting the second allegedly unlawful seizure, and the trial court did not err in denying his motion to suppress. See Lowell , 275 Or.App. at 380, 364 P.3d 34 (rejecting an exploitation argument where, "[e]ven assuming that defendant was unlawfully seized at the accident scene, that seizure had ended by the time" he made incriminating statements to an officer and consented to that officer's search of his backpack).
In summary, we conclude that the trial court did not err in denying defendant's motion to suppress. First, defendant's argument that Winkel extended defendant's traffic stop when he requested consent is unpreserved and, thus, we do not reach it. Next, Winkel's search of defendant's car was justified by defendant's consent and, thus, did not unjustifiably extend the traffic stop in violation of either Article I, section 9, or the Fourth Amendment. Finally, assuming that defendant was in fact subject to an unlawful second seizure, Shelton did not exploit that seizure to obtain defendant's incriminating statements or the physical evidence from defendant.
Affirmed.

"[O]fficers may not extend the duration of a traffic stop * * * regardless of the length of the extension." State v. Dennis , 250 Or.App. 732, 740, 282 P.3d 955 (2012). If Shelton had continued to "expeditiously proceed [ ] with the steps necessary to complete the stop" during Winkel's search, Winkel's search may not have extended the duration of the traffic stop. Aung , 265 Or.App. at 379, 335 P.3d 351 (emphasis in original). However, at oral argument, the state conceded that, instead of expeditiously proceeding with the steps necessary to complete the stop, Shelton provided cover for Winkel while he conducted his search, which distracted her, at least temporarily, from completing defendant's citation and, thus, extended the stop. We accept that concession.

Defendant does not contend that his consent was involuntary or coerced.